UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NICHOLAS G. [1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 1:19-cv-02625-JPH-DLP |
| | ) |
| ANDREW M. SAUL Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Nicholas G. seeks judicial review of the Social Security

Administration's ("SSA") decision denying his petition for Disability Insurance

Benefits and Supplemental Security Income.  He argues that the ALJ's decision

is unsupported by substantial evidence because: (1) in determining his

Residual Functional Capacity ("RFC"), the ALJ gave too little weight to his

treating physician's opinion, and (2) the ALJ failed to properly evaluate the

plaintiff's testimony about the severity of his symptoms. *See* dkt. 9 at 7, 12.

For the reasons that follow, the decision is **AFFIRMED**.

**I.
Facts and Background**

Plaintiff was 59 years old at the onset of his disability.  Dkt. 9 at 2; *see*

dkt. 5-2 at 49.  He graduated high school and worked in the past as both a

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent
with the recommendation of the Court Administration and Case Management
Committee of the Administrative Office of the United States courts, the Southern
District of Indiana has opted to use only the first name and last initial of non-
governmental parties in its Social Security judicial review opinions.

plasterer and a plasterer crew supervisor.  Dkt. 5-2 at 59.  Beginning in 2013,
Plaintiff received treatment from a cardiologist, Dr. Thomas M. Broderick.  *See*
dkt. 5-10 at 29–30.  And in 2014, he began consistently visiting primary care
physician Dr. Kimberly Kick.  Dkt. 5-11 at 16–18.  These two doctors identified
a variety of diagnoses, including coronary artery disease, type 2 diabetes,
hypertension, obesity, and sleep apnea.  *Id.*; dkt. 5-10 at 29–30.

In early 2014, Plaintiff reported fatigue, shortness of breath, and
difficulty completing lengthy activities.  Dkt. 5-10 at 26; dkt. 5-11 at 10.  In
2016, on top of his previous symptoms, Plaintiff reported chest discomfort,
back pain, and thigh cramping.  Dkt. 5-14 at 10.  In 2017, Plaintiff's reported
symptoms worsened to include muscle soreness, periodic confusion,
tingling/numbness in his feet, poor stamina, chronic leg pain, and ongoing
shortness of breath.  Dkt. 5-14 at 2; dkt. 5-15 at 3, 25.  Because of these
symptoms, Dr. Kick concluded that Plaintiff could sit up to four hours, stand
up to two hours, and walk up to two hours during a workday, with additional
limits on reaching overhead, handling, climbing, balancing, stooping, kneeling,
crouching, and crawling.  Dkt. 5-11 at 90–94.

Plaintiff applied for Disability Insurance Benefits and a Period of
Disability in September of 2015, alleging an onset date in January of 2014.
Dkt. 5-2 at 30.  The SSA denied his application both initially and upon
reconsideration.  *Id.*  Administrative Law Judge ("ALJ") Genevieve Adamo held a
hearing in March 2018 and denied Plaintiff's claims in June 2018.  *Id.* at 29.

In her decision, the ALJ followed the five-step sequential evaluation outlined in 20 C.F.R. § 404.1520(a)(4), ultimately concluding that Plaintiff was not disabled.  Dkt. 5-2 at 32–43.  Specifically, the ALJ found that:

- At Step One, Plaintiff had not engaged in substantial gainful activity[2] since the alleged onset date.  *Id.* at 37.  The ALJ held that Plaintiff's short and sporadic jobs were unsuccessful work attempts.  *Id.* at 32.

- At Step Two, Plaintiff had "the following severe impairments: coronary artery disease (status post percutaneous revascularization and placement of cardiac defibrillator with hypertension and dyslipidemia), diabetes mellitus with neuropathy, and obesity."  *Id.*  Plaintiff also experienced "the following non-severe impairments: obstructive sleep apnea, liver problems, basal cell carcinoma, hernia (status post repair), and back problems."  *Id.* at 33.  Plaintiff did not have "any medically determinable mental impairments." *Id.* at 34.

- At Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  *Id.* at 34.

- After Step Three but before Step Four, he had the RFC "to perform light work . . . except that he is only occasionally able to climb, balance, stoop, kneel, crouch, and crawl."  *Id* at 35.

- At Step Four, Plaintiff was "capable of performing past relevant work," and therefore, "not under a disability . . . at any time from January 1, 2014 . . . through the date of this decision."  *Id.* at 38.

The Appeals Council denied review in April 2019.  *Id.* at 1.  Later that month, Plaintiff brought this action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g).  Dkt. 1.

---

[2] Substantial gainful activity is defined as work activity that is both substantial (involving significant physical or mental activities) and gainful (usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

## II.
## Applicable Law

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts." *Id.* at 217. First, it requires an inability to engage in any substantial gainful activity. *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.* "The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274.

When an applicant seeks judicial review, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In evaluating the evidence, the Court gives the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. §

404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).  "If a claimant satisfies

steps one, two, and three, []he will automatically be found disabled.  If a

claimant satisfies steps one and two, but not three, then []he must satisfy step

four.  Once step four is satisfied, the burden shifts to the SSA to establish that

the claimant is capable of performing work in the national economy."  *Knight v.

Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a

claimant's RFC by evaluating "all limitations that arise from medically

determinable impairments, even those that are not severe."  *Villano v. Astrue*,

556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a

line of evidence contrary to the ruling."  *Id.*  The ALJ uses the RFC at step four

to determine whether the claimant can perform his own past relevant work

and, if not, at step five to determine whether the claimant can perform other

work.  *See* 20 C.F.R. § 404.1520(e), (g).  The burden of proof is on the claimant

for steps one through four, but shifts to the Commissioner at step five.  *See*

*Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III.
### Analysis

Plaintiff argues that the ALJ's decision should be reversed and the case remanded because the ALJ (1) failed to properly weigh medical evidence from Plaintiff's treating physician when determining his RFC, dkt. 9 at 7, and (2) improperly considered the Plaintiff's testimony at the March 2018 hearing, *id.* at 12.

### A.    The ALJ's Evaluation of the Treating Physician's Opinion

Plaintiff argues that in determining his RFC, the ALJ inappropriately gave "little weight" to Dr. Kick's opinion—despite her position as Plaintiff's primary care physician—on the Plaintiff's ability to "sit, stand, walk, and use . . . his upper extremities." Dkt. 9 at 8. He also contends that the ALJ erred by noting that some of Dr. Kick's findings were "normal," and by giving these findings greater weight than the "above abnormal cardiac tests." *Id.* at 8–9. The Commissioner responds that "the ALJ provided a narrative discussion of

the medical and nonmedical evidence," and properly assessed Plaintiff's abilities.  Dkt. 15 at 10.

"Generally, [ALJs] give more weight to medical opinions from . . . treating sources," 20 C.F.R. § 404.1527(c)(2), and grant "more weight to the medical opinion of a[n] [examining] source. 20 C.F.R. § 404.1527(c)(1).  If the ALJ finds that "a treating source's medical opinion . . . is well-supported" and is "not inconsistent with the other substantial evidence," it will be given "controlling weight."  20 C.F.R. § 404.1527(c)(2).  However, ALJs should give more weight to opinions that are supported by relevant evidence, 20 C.F.R. § 404.1527(c)(3), and that are "consistent with the record as a whole," 20 C.F.R. § 404.1527(c)(4).  The Seventh Circuit has upheld an ALJ's decision to reject a medical opinion when the ALJ "minimally articulated" her reasons for doing so. *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008); *see also Stepp v. Colvin*, 795 F.3d 711, 713 (7th Cir. 2015) ("[O]ur review is 'extremely limited.").

The ALJ gave little weight to several limitations in Dr. Kick's 2017 opinion, including:

> Sitting for just 3 hours at a time, standing or walking for just 2 hours each at a time, sitting for a total of just 4 hours and standing/walking for a total of just 2 hours each in an eight-hour period, occasionally reaching overhead bilaterally, frequently operating foot controls bilaterally, no working at unprotected heights or in extreme heat, no working around more than moderate noise, only frequently operating a motor vehicle, frequent reaching in directions other than overhead, frequent handling and fingering/feeling, frequent pushing and pulling, and only occasional exposure to vibrations, extreme cold, dust, odor, fumes, pulmonary irritants, humidity, wetness, and moving mechanical parts.

*Id.* She found these limitations inconsistent with record evidence, including Plaintiff's testimony and Dr. Kick's findings that most of Plaintiff's symptoms were "within normal limits." *Id.* at 35–36. Specifically, in making her RFC calculation, the ALJ noted that the "claimant's physical examination findings have been largely within normal limits, except for obesity . . . and high blood pressure." Dkt. 5-2 at 36. The ALJ provided many examples of the evidence supporting this conclusion, including a lack of hospital visits and ambulatory devices, as well as the ability to walk a "couple of miles" as recently as 2017. *Id.* at 36–37. The ALJ further noted that her RFC conclusion was "more restrictive than that of the State Agency physicians" and "generally consistent or more restrictive than the July 2017 opinion by Dr. Kick, the claimant's primary care physician." *Id.* These inconsistencies between the record evidence and the limitations in Dr. Kick's opinion support the decision not to give controlling weight to the medical opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Meuser v. Colvin*, 838 F.3d 905, 912 (7th. Cir. 2016) (treating sources' opinions are "entitled to controlling weight if 'well-supported and not inconsistent with other substantial evidence").

Since the ALJ did not give Dr. Kick's opinion controlling weight, she was required to "assign it a proper weight based on factors like the length and nature of the physician–patient relationship, the opinion's consistency with the record, and the physician's area of specialty." *Olivas v. Saul*, 799 Fed. Appx. 389, 391 (7th Cir. 2019) (citing 20 C.F.R. § 404.1527(c)). The ALJ "need not

explicitly discuss and weigh each factor." *Collins v. Berryhill*, 743 Fed. Appx. 21, 25 (7th Cir. 2018).

Plaintiff saw Dr. Kick several times between 2014 and 2017, *see* dkt. 5-11 at 16–18; dkt. 5-14 at 10; dkt. 5-14 at 2; dkt. 5-15 at 3, 25, and the ALJ made findings based on appointments in 2014 and in 2017, dkt. 5-2 at 37–38. As explained above, she also identified and relied on several inconsistencies between the rejected opinion from 2017 and other record evidence, including evidence from appointments with Dr. Kick. *See id.* Finally, the ALJ recognized that Dr. Kick was Plaintiff's "primary care physician" and noted that Dr. Kick had no specific training to evaluate disability for the SSA. *Id.* at 37; *see Elder*, 529 F.3d at 417 (affirming an ALJ who recognized that the treating physician was a "family practitioner" and "not a specialist"). The ALJ therefore gave reasons rooted in each of the relevant factors, satisfying her burden to "only minimally articulate" her reasoning in weighing a treating physician's opinion. *Collins*, 743 Fed. Appx. at 25.

Plaintiff points to *Scrogham v. Colvin*, 765 F.3d 685 (7th Cir. 2014), to argue that the ALJ erred by giving Dr. Kick's opinions little weight. Dkt. 9 at 7. But in *Scrogham*, the ALJ "did not discuss any of" the required factors, discredited all of the primary physician's reports without providing good reasons to do so, and failed to consider the changes that resulted from progression of the claimant's disease. *Id.* at 696–97. Here, however—as explained above—the ALJ at least "minimally articulate[d]" her analysis of the required factors. *Collins*, 743 Fed. Appx. at 25; *see* 20 C.F.R. § 404.1527(c);(d).

Moreover, unlike the ALJ in *Scrogham*, the ALJ discredited only one of Dr. Kick's many reports and provided ample reasons for doing so.  Finally, the ALJ in *Scrogham* did not consider the claimant's various "degenerative diseases" that compounded the claimant's symptoms over time.  *See id.*  Here, the record does not reveal that Plaintiff has received a similar diagnosis that required the ALJ's consideration.  This case is therefore more like *Collins* and *Elder*, in which the ALJs did not err because they considered the specialty of the treating physician, type of medical opinion at issue, and consistency with other record evidence.  *Elder*, 529 F.3d at 416; *Collins*, 743 Fed. Appx. at 25.

Plaintiff also argues that the ALJ gave too much weight to the "normal" findings in Dr. Kick's report and "rejected" all of Dr. Kick's abnormal findings. Dkt. 9 at 8.  However, the ALJ extensively analyzed Dr. Kick's findings and compared them to the requirements necessary to prove that the "claimant meets or equals the requirements of any of the listings in the [CFR]."  Dkt. 5-2 at 34.  In doing so, the ALJ:

- Found no evidence of heart failure, heart disease, or cardiac arrhythmias severe enough to satisfy the impairment requirements.
- Identified no evidence of diabetes, but noted that it had been a considered condition regardless.
- Acknowledged the limitations the claimant's severe obesity can have on the claimant's RFC.
- Recounted the plaintiff's condition, past surgeries and operations, and previously prescribed medications.
- Noted that claimant's "physical examination findings have been largely within normal limits, except for obesity . . . and high blood pressure."
- Explained that the limitations identified in Dr. Kick's July 2017 report were inconsistent with Plaintiff's own testimony and actions,

and that Dr. Kick was not "specifically trained to evaluate disability for Social Security Administration."

*Id.* at 34–38.

In sum, the ALJ analyzed the record as a whole and supported her decision with substantial evidence. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citing 42 U.S.C. § 405(g)). Accordingly, the ALJ properly articulated her reasoning in calculating the RFC.

### B.     The ALJ's Consideration of the Plaintiff's Testimony

Next, Plaintiff argues that the "evaluation of [Plaintiff's] subjective statements is 'patently wrong.'" Dkt. 9 at 14 (citing *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)). He contends that the ALJ improperly rejected his allegations merely "because the available objective medical evidence does not substantiate" them. Dkt. 9 at 14 (citing 20 C.F.R. § 404.1529(c)(2)). The Commissioner responds that the ALJ supported her findings with substantial evidence, and that she properly considered "Plaintiff's subjective statements as to his symptoms and resulting limitations." Dkt. 15 at 18.

When determining if an individual is disabled, "[the ALJ] consider[s] all . . . symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Several factors about the symptoms are considered:

- Daily activities.
- Location, duration, frequency, and intensity of your pain or other symptoms.
- Precipitating and aggravating factors

- The type, dosage, effectiveness, and side effects of any medication taken.
- Treatment, other than medication, received.
- Any other measure used to alleviate pain; and
- Other factors pertinent to functional limitations and restrictions.

20 C.F.R. § 404.1529(c)(3). An ALJ "may not discredit a claimant's testimony about [his] pain and limitations solely because there is no objective medical evidence supporting it." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). However, an ALJ is only required to "minimally articulate [her] reasons for crediting or rejecting evidence of disability." *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)).

Here, when reaching her decision, the ALJ found that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." Dkt. 5-2 at 35. However, the ALJ found that the "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 36. The ALJ pointed to a variety of factors demonstrating inconsistencies between the record and Plaintiff's testimony, including:

1) The 21-month gap between when claimant asserts his disability began and when he filed for benefits. *Id.* at 36 (noting application in September of 2015 for a disability beginning in January of 2014).

2) Plaintiff's retention of two distinct jobs for various periods of time during 2015 that required "exertion in excess of light work." *Id.* And claimant's testimony about his ability to engage in a wide

array of activities, including "maintain[ing] his marriage with his wife, get[ting] along with his mother-in-law well enough to live with her, [and] feed[ing] his horse." *Id.*

3)    [T]he record . . . reflects that the claimant has not always been compliant with treatment recommendations." *Id.* at 37. Specifically, Plaintiff "has not always regularly . . . checked his blood glucose levels at home, followed a diet . . ., or take[n] his medication as he is supposed to."[3] *Id.*

Those findings demonstrate that the ALJ accounted for a wide variety of the factors required under 20 C.F.R. § 404.1529. She therefore "minimally articulate[d]" her reasons for discrediting Plaintiff's testimony. *Nelson*, 131 F.3d at 1237 (7th Cir. 1997).

## IV.
## Conclusion

The Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 11/19/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[3] Plaintiff argues that a failure to adhere to treatment cannot be counted against him because the record indicates that Plaintiff could not afford it. Dkt. 9 at 15–16. The ALJ, however, did acknowledge that the plaintiff did not have health insurance before considering the Plaintiff's failure to adhere to lower cost suggested treatments. Dkt. 5-2 at 8. These treatments, such as checking his own glucose levels at home, would be less affected by a lack of health insurance.

Distribution:

Brian J. Alesia
OFFICE OF REGIONAL CHIEF COUNSEL FOR SOCIAL SECURITY
brian.alesia@ssa.gov

Michael G. Myers
mgmyers10@sbcglobal.net

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov